ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
CHARLES E.T. ROBERTS
Deputy Assistant Attorney General
United States Department of Justice
Energy and Natural Resources Division

MEREDITH L. FLAX, Deputy Section Chief
MICHAEL R. EITEL, Assistant Section Chief
MICHELLE M. SPATZ, Senior Trial Attorney (DC Bar 1044400)
SARA M. WARREN, Trial Attorney (GA Bar 966948)
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
202-598-9741 (Spatz); 202-598-5785 (Warren)
michelle.spatz@usdoj.gov; sara.warren@usdoj.gov

ALEC BOWMAN, Trial Attorney (DC Bar 90019707)
Natural Resources Section
150 M Street NE
Washington, D.C. 20002
202-532-3098
alec.bowman@usdoj.gov
*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DOUG BURGUM, *U.S. Secretary of the Interior*, *et al.*,<br><br>Federal Defendants. | Case No. 3:26-cv-10071-VC<br><br>Related Cases: 3:26-cv-07176-VC<br>3:26-cv-07507-VC<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT COMPLAINT [Dkt. 70]**<br><br>Date: December 10, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 3, San Francisco<br>Judge: Hon. Vince Chhabria |

## TABLE OF CONTENTS

BACKGROUND ....................................................................................................................1

STANDARD OF REVIEW ....................................................................................................4

ARGUMENT ......................................................................................................................4

I. Plaintiffs' Proposed Supplement Does Not Challenge Final Agency Action............... 5

A. The memoranda do not consummate any agency decision-making process. ... 5

B. Legal consequences do not flow from the legal memoranda........................... 6

II. Notice-and-comment rulemaking was not required.................................................... 8

III. Plaintiffs merely speculate about general future harms. ............................................. 9

CONCLUSION....................................................................................................................10

## TABLE OF AUTHORITIES

### Cases

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland*,
24 F.4th 1249 (9th Cir. 2022) ........ 7

*Arnold v. Metlife Auto & Home*,
834 F. App'x 365 (9th Cir. 2021) ........ 4

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*,
515 U.S. 687 (1995) ........ passim

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 1, 5, 6, 10

*Camp v. Pitts*,
411 U.S. 138 (1973) ........ 1

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ........ 2

*City of San Diego v. Whitman*,
242 F.3d 1097 (9th Cir. 2001) ........ 6

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
80 F.4th 943 (9th Cir. 2023) ........ 4

*Erringer v. Thompson*,
371 F.3d 625 (9th Cir. 2004) ........ 8

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ........ 9

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ........ 1

*Foman v. Davis*,
371 U.S. 178 (1962) ........ 1

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ........ 5

*FTC v. Standard Oil Co.*,
449 U.S. 232 (1980) ........ 1

*Inst. for Fisheries Res. v. Hahn*,
424 F. Supp. 3d 740 (N.D. Cal. 2019) .......... 6

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 1, 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .......... 4

*Nat'l Park Serv. v. Nat'l Tr. for Hist. Pres. in the U.S.*,
609 U.S. 1068 (2026) .......... 10

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
465 F.3d 977 (9th Cir. 2006) .......... 4, 5

*Parents for Priv. v. Barr*,
949 F.3d 1210 (9th Cir. 2020) .......... 4

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) .......... 6, 9

*S. Cal. All. of Publicly Owned Treatment Works v. EPA*,
8 F.4th 831 (9th Cir. 2021) .......... 6

*San Luis & Delta Mendota Water Auth. v. U.S. Dep't of Interior*,
236 F.R.D. 491 (E.D. Cal. 2006) .......... 4

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) .......... 1

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 9

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
578 U.S. 590 (2016) .......... 6

*Ukiah Valley Med. Ctr. v. FTC*,
911 F.2d 261 (9th Cir. 1990) .......... 6

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
5 F.4th 997 (9th Cir. 2021) ........ 7

**Statutes**

5 U.S.C. § 551(13) ........ 6
5 U.S.C. § 553 ........ 8
5 U.S.C. § 553(b)(A) ........ 9
5 U.S.C. § 702 ........ 5
5 U.S.C. § 704 ........ 5
16 U.S.C. § 1532(19) ........ 2
16 U.S.C. § 1536(a)(2), (b)(4) ........ 5
16 U.S.C. § 1539(a)(1)(B) ........ 7
U.S. Const. art. III, § 2, cl. 1 ........ 9

**Rules**

Fed. R. Civ. P. 15(d) ........ 1, 4

**Regulations**

46 Fed. Reg. 54748 (Nov. 4, 1981) ........ 2
64 Fed. Reg. 60727 (Nov. 8, 1999) ........ 2
91 Fed. Reg. 43300 (July 14, 2026) ........ passim

This case presents a single legal question: whether the final rule rescinding the regulatory definition of "harm" under the Endangered Species Act (ESA) was lawful. *See* 91 Fed. Reg. 43300 (July 14, 2026) (Final Rule). State Plaintiffs seek leave to inject into this otherwise straightforward Administrative Procedure Act (APA) case collateral, post-decisional disputes over agency memoranda—documents which merely restate analysis the agencies already articulated in the Final Rule and carry no independent legal effect. The Court should not condone this gambit. Plaintiffs' proposed supplemental claims are futile. The memoranda are not "final agency action" under the APA because they do not consummate agency decision-making or determine rights or obligations. The memoranda are, at most, post-decisional analysis without legal consequences. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *FTC v. Standard Oil Co*., 449 U.S. 232, 239-40 (1980). Nor do Plaintiffs plausibly allege Article III injury traceable to these memoranda. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Allowing supplementation would undermine the settled APA principle that judicial review is confined to the administrative record and to the basis the agency invoked at the time of decision. Post-decisional memoranda cannot expand the record or supply new rationales. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *SEC v. Chenery Corp*., 318 U.S. 80, 87 (1943). And, under Federal Rule of Civil Procedure 15(d), the Court may deny supplementation for undue delay and futility, particularly where the proposal would derail efficient resolution of the existing claims and prejudice the orderly progression of summary judgment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court therefore should deny the motion to supplement.

## BACKGROUND

Plaintiffs in these related cases challenge the Final Rule rescinding the regulatory definition of "harm" as used in the ESA's "take" prohibition. The ESA regulates "take" of listed species. "'[T]ake' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). Previously, the U.S.

Fish and Wildlife Service (FWS) and the National Marine Fisheries Service (NMFS) (collectively, the Services) defined "harm" within the definition of "take" to include "an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 46 Fed. Reg. 54748, 54750 (Nov. 4, 1981); *see also* 64 Fed. Reg. 60727, 60731 (Nov. 8, 1999).

In 1995, applying *Chevron* deference, the Supreme Court upheld the now-rescinded definition of "harm" as a "permissible" construction of the statute. *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 697, 703, 708 (1995) (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Justice Scalia authored a canonical dissent, explaining that the ESA did not allow for the Services' now-rescinded definition of "harm." *Id.* at 714-36 (Scalia, J., dissenting). Focusing on the statutory text, Justice Scalia explained that the words Congress used to define "take" share "the sense of affirmative conduct intentionally directed against a particular animal or animals." *Id.* at 720.

In the Final Rule, the Services vindicated Justice Scalia and rescinded the regulatory definition of "harm," concluding that it was not the best reading of the statute. The Services explained:

> ["]To 'take,' when applied to wild animals, means to reduce those animals, by killing or capturing, to human control" (515 U.S. at 717 (Scalia, J., dissenting)). And here, under the *noscitur a sociis* canon, the term "harm," like the other nine verbs in the definition of "take," should be construed to require an "affirmative act[] . . . directed immediately and intentionally against a particular animal—not [an] act[] or omission[] that indirectly and accidentally cause[s] injury to a population of animals["] (515 U.S. at 719-720 (Scalia, J., dissenting); *see also id.* at 719. . . .

91 Fed. Reg. at 43301 (alterations except the first and last in original) (footnote omitted). The Final Rule further explained that the "meaning of the term 'harm' within the larger definition of 'take' was expertly explicated by Justice Scalia in his *Sweet Home* dissent." *Id.* at 43302.

Following the effective date of the Final Rule, the U.S. Fish and Wildlife Service Director and the National Oceanic and Atmospheric Administration's General Counsel signed memoranda that summarize, in practical terms, the meaning of the ESA's "take" prohibition, as interpreted by Justice Scalia and in the Final Rule. *See* Dkt. No. 70-1 at 62-70. Specifically, they restate that the Final Rule adopted Justice Scalia's *Sweet Home* dissent, which reduces the "take" prohibition to four elements: (1) an affirmative act that is (2) intentionally directed at, and (3) operates directly on, (4) particular living animals. Dkt. No. 70-1 at 63-64, 68-69.[1] The memoranda then explain the statute's *mens rea* provisions, which as Justice Scalia explained attach to the animal's biological identity. *Id.* at 64-65, 70.

The memoranda do not present a new interpretation of "take." The Final Rule had already adopted the dissent's interpretation and repeatedly quoted its "directed immediately and intentionally against a particular animal" formulation. *Sweet Home*, 515 U.S. at 719-20 (Scalia, J., dissenting); 91 Fed. Reg. at 43301, 43305-06. The four elements in the memoranda come from Justice Scalia's dissent, which is the only authority to which the tables in the memoranda cite. *Compare* Dkt. No. 70-1 at 63, 68, *with Sweet Home*, 515 U.S. at 715-22, 732-35 (Scalia, J., dissenting). The memoranda illustrate those elements with the dissent's own examples and with two others, a vessel strike and roosting bats, that apply the dissent's distinction between conduct directed at an animal and conduct that reaches it "indirectly and accidentally." Dkt. No. 70-1 at 64-65, 69-70; *Sweet Home*, 515 U.S. at 719-20, 735 (Scalia, J., dissenting); *see also* 91 Fed. Reg. at 43306. The post-decisional memoranda therefore summarize prior analysis in the Final Rule and Justice Scalia's dissent; they do not break new ground.

Nonetheless, State Plaintiffs now seek leave to supplement their complaint with claims challenging two non-binding, post-decisional legal memoranda summarizing the ESA's "take" prohibition. Plaintiffs allege that the memoranda are arbitrary and capricious, were issued

[1] Page citations to the memoranda refer to the page numbers generated by CM/ECF.

without notice-and-comment rulemaking, and were issued in violation of the National Environmental Policy Act (NEPA). Dkt. No. 70-1 ¶¶ 145-60.

**STANDARD OF REVIEW**

A plaintiff may not supplement its complaint as a matter of right but, instead, must seek leave of court to do so. *See* Fed. R. Civ. P. 15(d). Courts may deny a motion for leave to supplement if supplementation would be futile. *San Luis & Delta Mendota Water Auth. v. U.S. Dep't of Interior*, 236 F.R.D. 491, 500 (E.D. Cal. 2006). A proposed claim may be deemed futile if it fails as a matter of law, fails to state a claim, or its defeat is inevitable on summary judgment. *See Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (inevitable defeat on summary judgment); *Parents for Priv. v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020) (failure of legal theories); *see also Arnold v. Metlife Auto & Home*, 834 F. App'x 365, 366 (9th Cir. 2021) (unpublished) (applying futility analysis to motion to supplement). A complaint fails to state a claim where it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

**ARGUMENT**

Final agency action is a jurisdictional prerequisite to an APA claim. *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006). When seeking leave to insert new claims in this case, Plaintiffs assert that the agencies' legal memoranda constitute final agency action. Dkt. No. 70 at 6. But Plaintiffs' argument—primarily, argument by assertion—does not establish finality. Nor do they establish that notice-and-comment rulemaking was required because the memoranda lack the force of law. Moreover, Plaintiffs do not have standing to challenge the agencies' non-binding legal analysis. Because their proposed claims are not cognizable under the APA and fail to meet the requirements for Article III standing, their proposed supplement is futile, and the Court should therefore deny Plaintiffs' motion.

## I. Plaintiffs' Proposed Supplement Does Not Challenge Final Agency Action.

Plaintiffs' proposed supplemental claims all arise (if at all) under the APA. "The APA sets forth the procedures by which federal agencies are accountable to the public and their actions [are] subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Specifically, the APA provides a right of review to a "person suffering legal wrong because of [an] agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. To be subject to review, the agency action must be either "made reviewable by statute [or] final agency action for which there is no other adequate remedy." *Id.* § 704. The final agency action requirement is jurisdictional. *See Or. Nat. Desert Ass'n*, 465 F.3d at 982. An agency action is "final" for purposes of Section 704 when it: (1) marks "the 'consummation' of the agency's decisionmaking process"; and (2) is a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78 (citations omitted).

### A. The memoranda do not consummate any agency decision-making process.

Beginning with the first *Bennett* prong, the mere issuance of legal analysis, untethered to any specific agency decision-making process, does not constitute final agency action under the APA. Specifically, the memoranda are not part of any identifiable agency decision-making process; they do not grant or deny a permit, resolve any enforcement matter, or adopt a rule. By contrast, the issuance of biological opinions and incidental take statements generally constitute final agency action as the consummation of the statutory decision-making process described in ESA Section 7. *See* 16 U.S.C. § 1536(a)(2), (b)(4); *Bennett*, 520 U.S. at 178. The memoranda have no similar effect. They instead explain legal principles independent of any agency process or proceeding. As the Ninth Circuit explained in *City of San Diego v. Whitman*, 242 F.3d 1097, 1101-02 (9th Cir. 2001), an agency letter interpreting a statute and encouraging a permittee to submit an application to renew a permit was not final because it did not consummate an agency decision-making process. Indeed, the process would not even begin until the permittee submitted

an application to renew its permit. *Id.* Here, the memoranda are one step further removed; the Final Rule is the groundwork for future agency decisions—not the memoranda that restate the Final Rule's findings.[2]

**B. Legal consequences do not flow from the legal memoranda.**

The second *Bennett* prong asks whether the agency action is a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 178. Here, the memoranda neither command anyone to act or refrain from acting nor "impose an obligation, deny a right, or fix some legal relationship." *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 (9th Cir. 1990) (citation omitted). They instead are addressed to agency staff and lawyers, not to regulated parties, and they resolve no permit application, consultation, or enforcement matter. In this way, the memoranda are unlike the "jurisdictional determination" in *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 598-99 (2016), which by regulation and interagency agreement created or denied a safe harbor from enforcement. Rather, any effect depends on later decisions in particular matters. 91 Fed. Reg. at 43305 (Services will "review each specific situation" as it arises). Agency memoranda are not final agency action where, as here, "subsequent agency decision making is necessary to create any practical consequences." *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831, 837-38 (9th Cir. 2021).

Internal agency statements analyzing the law impose no legal consequences because "it is the court that ultimately decides whether a given regulation [or statute] means what the agency says." *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 103-04 & n.4 (2015); *accord Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 749 (N.D. Cal. 2019) (agency document interpreting the word "drug" under the Food, Drug, and Cosmetic Act was not final agency action). In *Whitewater Draw Natural Resource Conservation District v. Mayorkas*, 5 F.4th 997,

---

[2] Nor, for similar reasons, do the memoranda even constitute "agency action" under the APA, which refers to "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13).

1009 (9th Cir. 2021), even an agency's NEPA manual was not final agency action because "NEPA, not the Manual, is the source of any binding legal obligations to which [the agency] is subject." *Id.* Similarly, here, the "take" prohibition is imposed by the ESA and was fixed at the time of the statute's enactment, not when the Services interpreted those mandates in 2026. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

The Ninth Circuit accordingly distinguishes "between an informational document that merely provides the agency's interpretation of a statute, . . . and a decision that determines how a statute or regulation applies to facts for enforcement purposes[.]" *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022). The memoranda are the former. The Final Rule adopted Justice Scalia's interpretation of "take," 91 Fed. Reg. at 43301, and repeatedly stated the resulting standard—that take requires "an 'affirmative act[] . . . directed immediately and intentionally against a particular animal—not [an] act[] or omission[] that indirectly and accidentally cause[s] injury to a population of animals.'" *Id.* (quoting *Sweet Home*, 515 U.S. at 719-720 (Scalia, J., dissenting)) (alterations in original).

Plaintiffs' contrary arguments are not supportable. Plaintiffs argue that the memoranda "determine[] whether incidental take permits will be required for specific activities" by "provid[ing] examples." Dkt. No. 70 at 6-7. Plaintiffs' premise is flawed. An incidental take permit is never "required," and the memoranda say nothing of the sort. Section 10's incidental take permit program is voluntary. *See* 16 U.S.C. § 1539(a)(1)(B). In fact, the memoranda say nothing about the Section 10 permitting program, who must participate, and how a permit should be issued. Moreover, the examples in the memoranda are illustrative, not a novel interpretation. The Final Rule adopted Justice Scalia's interpretation of the meaning of "harm" within the larger definition of "take" and adopted the rationale in the *Sweet Home* dissent. 91 Fed. Reg. at 43301-02. In a response to comments, the Final Rule explicitly invoked an example from the *Sweet Home* dissent concerning fishing for unprotected salmon and inadvertently catching an endangered salmon. *Id.* at 43306 (citing *Sweet Home*, 515 U.S. at 719). Justice Scalia's *Sweet Home* dissent likewise

supplied the examples cited in the memoranda. *Compare* Dkt. No. 70-1 at 63-65, 68-70 (examples about poison, drained ponds, the unharmed butterfly, and the elk and mule deer), *with Sweet Home*, 515 U.S. at 721, 735 (Scalia, J., dissenting) (same). The additional whale and bat examples simply further elucidate apply the dissent's distinction between conduct directed at animals and conduct that injures them "indirectly and accidentally." Dkt. No. 70-1 at 64, 69; *Sweet Home*, 515 U.S. at 719-20 (Scalia, J., dissenting); 91 Fed. Reg. at 43306.

Plaintiffs also allege that the memoranda are inconsistent with FWS's regulatory definition of "harass" and NMFS's guidance on that term, and that the memoranda "instruct the Services to cease issuing incidental take permits" for conduct that no longer meets the definition of take. Dkt. No. 70-1 ¶¶ 114, 148. Again, the memoranda provide no "instruction" about the permitting process. What's more, Plaintiffs concede the Final Rule, not the memoranda, is the source of the change, because, in the Final Rule, "the Services now assert that the ESA's definition of 'take' is limited to an 'affirmative act[] . . . directed immediately and intentionally against a particular animal—not [an] act[] or omission[] that indirectly and accidentally cause[s] injury to a population of animals.'" *Id.* ¶ 7. Plaintiffs therefore confirm that the memoranda add nothing new. They direct their claims at post-decisional memoranda that summarize analysis and decisions already made in the Final Rule and set forth in Justice Scalia's dissent and not, as required under the APA, at some new final agency action.

## II. Notice-and-comment rulemaking was not required.

Plaintiffs' proposed supplemental claims about notice-and-comment rulemaking are similarly futile. The APA requires agencies undertaking rulemakings to advise the public through a Federal Register notice of the terms or substance of the proposed rule, allowing the public a period to comment. 5 U.S.C. § 553; *Erringer v. Thompson*, 371 F.3d 625, 629 (9th Cir. 2004). Plaintiffs and the rest of the public had ample opportunity to comment on the Services' adoption in the Final Rule of Justice Scalia's interpretation of "take" as the best reading of the ESA. Plaintiffs' suggestion that they needed another opportunity to address the exact same

issues—a comment opportunity on post-decisional memoranda—is nonsensical. After all, the public, and many plaintiffs in these related cases, took full advantage of the opportunity to submit comments on the Final Rule, and the Services received 357,699 total submissions on the rulemaking. *See* Docket Details, https://www.regulations.gov/docket/FWS-HQ-ES-2025-0034.

In any event, the notice-and-comment requirement does not *per se* apply to "interpretative rules" that do not have the force of law. 5 U.S.C. § 553(b)(A); *see also Perez*, 575 U.S. at 95-96. For all the reasons discussed above, the memoranda could not have the "force of law" because they merely summarize the position in the Final Rule and Justice Scalia's dissent regarding the meaning of "take." Thus, the memoranda are not final agency action but, even if they were, at most the memoranda would constitute "interpretative" documents for which notice and comment was not required.

## III. Plaintiffs merely speculate about general future harms.

Finally, Plaintiffs lack standing to challenge the memoranda.[3] Article III confines federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation modified). To establish standing, Plaintiffs must show (1) a concrete and particularized injury that (2) is traceable to the challenged conduct and (3) would likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. Because Plaintiffs seek prospective relief, they must establish a "sufficient likelihood of future injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "[S]peculation does not suffice." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

Plaintiffs' challenges to the Services' memoranda fail because they merely speculate about future injury. Plaintiffs do not attempt to identify any injury they claim is traceable to the

[3] The Court need not reach this issue if it determines that Plaintiffs have not challenged a final agency action. Similarly, the court need not reach the issue of final agency action if it determines that Plaintiffs lack standing to challenge the Services' memoranda.

memoranda, as opposed to the Final Rule. Their proposed supplement would add the words "coupled with the issuance of the Take Memos" to an allegation that the rescission of the regulatory definition of harm will weaken protections for Southern Resident killer whales, and would add "and the Take Memos" to a sentence alleging that the rescission of the regulatory definition of harm threatens state investments in conservation benefit agreements and conservation banks. *See* Dkt. No. 70-1 ¶¶ 24, 33. Plaintiffs' inability to allege any concrete, imminent injury attributable to the memoranda—as opposed to the rescission of the regulatory definition of harm—stops their supplement in its tracks. *See Nat'l Park Serv. v. Nat'l Tr. for Hist. Pres. in the U.S.*, 609 U.S. 1068, 1072 (2026) (per curiam) (distress at, or disagreement with, a defendant's actions is not injury in fact).

The Services' memoranda, by themselves, carry consequences for no one. The memoranda restate what the ESA and Final Rule already require and, thus, break no new ground. Plaintiffs cannot show that the Services' non-binding restatement of the Final Rule's legal analysis of "take," in and of itself, injures them. Because the memoranda restate an interpretation of the Rule already adopted, an order setting aside the memoranda would redress nothing. Plaintiffs therefore cannot establish Article III standing for their claims about the memoranda.

**CONCLUSION**

Plaintiffs' proposed supplement does not challenge a final agency action for purposes of the APA because the Services' memoranda do not (1) mark "the 'consummation' of the agency's decisionmaking process"; and (2) are not a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *See Bennett*, 520 U.S. at 177-78. Plaintiffs' proposed claims about notice-and-comment procedures similarly fail because the memoranda do not have the force of law. Furthermore, Plaintiffs lack standing to challenge the memoranda because they merely speculate in the most general terms about future harms that may

arise from the memoranda. The Court should deny Plaintiffs' motion for leave to supplement their complaint.

Dated: November 17, 2026

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
CHARLES E.T. ROBERTS
Deputy Assistant Attorney General
United States Department of Justice
Energy and Natural Resources Division

MEREDITH L. FLAX, Deputy Section Chief
MICHAEL R. EITEL, Assistant Section Chief

*<u>/s/ Sara M. Warren</u>*
SARA M. WARREN, Trial Attorney (GA Bar 966948)
MICHELLE M. SPATZ, Senior Trial Attorney (DC Bar 1044400)
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
202-598-5785 (Warren); 202-598-9741 (Spatz)
sara.warren@usdoj.gov; michelle.spatz@usdoj.gov

ALEC BOWMAN, Trial Attorney (DC Bar 90019707)
Natural Resources Section
150 M Street NE
Washington, D.C. 20002
202-532-3098
alec.bowman@usdoj.gov
*Attorneys for Federal Defendants*