ROB BONTA
Attorney General of California
LAURA J. ZUCKERMAN
Supervising Deputy Attorney General
TARA MUELLER (SBN 161536)
JENNIFER LODA (SBN 284889)
HEATHER M. LEWIS (SBN 291933)
SUSANA AGUILERA (SBN 341788)
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-0754
Fax: (510) 622-2207
E-mail: Tara.Mueller@doj.ca.gov

*Attorneys for Plaintiff State of California*

*(Additional counsel listed on signature page)*

NICK BROWN
Attorney General of Washington
MAGGIE BAKER SMITH (*pro hac vice*)
ELIZABETH M. HARRIS (*pro hac vice*)
Assistant Attorneys General
Washington Attorney General's Office
Environmental Protection Division
800 5th Ave., Suite 2000, TB-14
Seattle, WA 98104-3188
Telephone: (360) 582-6569
E-mail: Maggie.Smith@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

STATE OF CALIFORNIA, *et al.*,

Plaintiffs,

v.

DOUG BURGUM, U.S. Secretary of the Interior, *et al.*,

Defendants.

Case No.3:26-cv-10071-VC

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY RELIEF**

NOTE ON MOTION CALENDAR:
December 10, 2026, at 10:00 a.m.

Defendants do not contest that State Plaintiffs' motion to supplement the complaint will not result in undue prejudice, will not cause undue delay, and is made in good faith. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Instead, Defendants argue only that the motion should be denied because it is futile. To demonstrate futility and defeat this motion to supplement the complaint, Defendants must satisfy the same test as for a motion to dismiss under FRCP 12(b)(6) for failure to state a claim. *See Novak v. United States*, 795 F.3d 1012, 1020–21 (9th Cir. 2015). Under this test, a proposed supplement is futile only if a plaintiff cannot plead sufficient factual matters, accepted as true, to state a claim that is plausible on its face. *See, e.g.*, *Mujica v. AirScan Inc.*, 771 F.3d 580, 592 (9th Cir. 2014). As demonstrated below, State Plaintiffs meet the pleading requirements.[1]

## I. THE TAKE MEMOS EXTEND THE HARM RULE RESCISSION.

As an initial matter, much of Defendants' argument is grounded in their contention that the Take Memos simply restate the contents of the Harm Rule Rescission and "break no new ground." Dkt No. 77 at 15.[2] In the Harm Rule Rescission, Defendants explained that they were rescinding the regulatory definition of harm based on their view that the statutory term "take"—of which harm is one aspect—applies only to an "affirmative act ... directed immediately and intentionally against a particular animal." AR0002; *see also* AR0006; AR0007. Because the regulatory definition of "harm" was not consistent with this interpretation, Defendants reasoned that its withdrawal was necessary and proper. But the Take Memos go well beyond this.

*First*, the Services' own documents demonstrate that they understood the Harm Rule Rescission to be limited to the withdrawal of that particular regulation and its inclusion of habitat modification or degradation within the definition of "harm." In their Regulatory Flexibility Analysis, the Services explained that the rule would only affect incidental take permits (hereinafter ITPs) provided under Section 10 for applicants "whose activities affect only habitat." AR0045. The Services explained that, "[e]ntities whose ITP needs arise exclusively from activities that cause direct take, such as wind energy

[1] The Western District of Washington recently ruled on a substantially similar motion in cases challenging the Harm Rule Rescission filed in that district. *Swinomish Indian Tribal Community, et al. v. NMFS et al.*, Case No. 2:26-cv-02473-TMC (filed July 14, 2026), ECF No. 33 (attached as Exhibit 1). The court agreed with the arguments presented here and held that the plaintiffs' proposed supplementation of the complaint to include claims against the Take Memos was not futile because, inter alia, the plaintiffs had plausibly alleged standing and that the Memos constituted final agency action.

[2] All page citations reference the Court's ECF pagination.

operations that may result in mortality of listed species, would still be required to obtain permits and are not expected to be affected by the rescission."AR0046. In contrast, the Take Memos make clear that a wind energy operation that directly kills, for example, endangered bats, would not be "taking" the bats because the wind turbines were not erected "for the purpose of affecting the animal." Proposed First Suppl. Compl. Declaratory Relief, Dkt No. 70-1 at 63-64, 69.

This example demonstrates that the Take Memos adopted a new requirement that only "purposefully directed" actions qualify as take under the ESA. Dkt No. 70-1 at 62 & 67. While the Rescission *never* adopted a requirement for "purposefully directed" actions, each Take Memo used the words "purpose," "purposeful," or "purposefully" eight times to describe actions constituting take. By creating a "purpose" test for all takings, the Take Memos nullify the statutory concept of incidental take—take that "is incidental to, *and not the purpose of*, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(a)(1)(B) (emphasis added).

*Second*, the Take Memos expanded the application of the rationale set forth in the Harm Rule Rescission to the other nine elements in the definition of "taking" a listed animal. Congress declared that "take" means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The Harm Rule Rescission eliminated the regulatory definition of "harm" and provided a rationale for doing so. The Harm Rule Rescission, however, did not address the nine other elements of the "take" definition. In fact, the Services' supporting documents demonstrate that the scope of the Rescission was "merely resorting to the plain meaning of the statute rather than the agencies' extraneous regulatory definition of "harm,'" as opposed to implementing a change in implementation of "take" in general. AR0037. FWS even explained that "[t]he action repealing the regulatory definition of 'harm,' *in no way directly dictates the future implementation of the ESA by the FWS*." AR0038 (emphasis added). In contrast, the Take Memos were issued to do exactly that—"to inform the application and administration of the 'take' provision following the Harm Rule." Dkt. No. 70-1 at 63 & 68.

The Take Memos provide a specific legal framework to be applied *in every instance*, not just in the context of habitat modification or degradation. In addition, that legal framework is inconsistent with FWS's regulatory definition of "harass," which includes "negligent act[s] or omission[s]" that "create[]

the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3. Under the legal theory adopted by the Take Memos, a negligent act could not be a "take," because its purpose was not to harass the animal, and an omission could not be "take," because it is not affirmative conduct. Accordingly, the Take Memos announce a new and substantive change in implementation of the ESA that is contrary to the ESA and extends beyond the specific context of habitat modification or degradation addressed by the Harm Rule Rescission.

## II. THE TAKE MEMOS ARE FINAL AGENCY ACTION.

Defendants argue that their issuance of the Take Memos is not a final agency action and that, therefore, the Court lacks jurisdiction over the supplemental claims challenging the Memos. Fed. Defs.' Opp'n to Pls.' Mot. For Leave to Suppl. Compl., Dkt No. 77 at 9. An agency's action is final when it (1) marks "the 'consummation' of the agency's decisionmaking process"; and (2) is a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). The Take Memos meet both of these requirements.

### A. The Take Memos consummate the agencies' decision-making processes.

To meet the first prong of the *Bennett* test for final agency action, the challenged agency action must constitute the consummation of the agency's decision-making process and "must not be of a merely tentative or interlocutory nature." 520 U.S. at 178. The finality of an agency action is "interpreted in a pragmatic and flexible manner." *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006). Here, nothing in the Take Memos suggest that its conclusions are "tentative" or "interlocutory," nor do Defendants suggest that their decision-making process on this subject is ongoing.

Defendants argue that the Take Memos do not consummate the agency decision-making process because they do not adopt a regulation. Dkt No. 77 at 10. But, as State Plaintiffs have alleged in the Proposed Supplemental Complaint, the Administrative Procedure Act required Defendants to issue the Take Memos as a rule. *See infra* Section III. Defendants cannot escape judicial review by failing to follow the procedures required by law. The Take Memos constitute a final statement from the Services

that they do not believe they have jurisdiction to enforce the ESA's Section 9 take prohibition as to any "take" that is not "purposefully directed" at an animal. And it is well established that "an agency's determination of its jurisdiction is the consummation of agency decisionmaking regarding that issue." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 578 (9th Cir. 2019). Accordingly, the Take Memos meet the first prong of the *Bennett* test.

**B. Legal consequences flow from the Take Memos.**

The Take Memos also have "direct and appreciable legal consequences" that satisfy the second prong of *Bennett*. 520 U.S. at 178. The memos significantly change the types of acts that the Services will prosecute as civil or criminal violations of ESA Section 9, the circumstances under which the Services will issue ITPs to non-federal entities under ESA Section 10, and whether the Services will issue "incidental take statements" (hereinafter ITSs) for federal actions under ESA Section 7. Changes to the rights and obligations of potential permittees and licensees constitute legal consequences that meet this standard. *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 869 (9th Cir. 2022) ("Legal consequences flow from the FONSI insofar as oil companies do not need to abide by any depth, discharge, or frequency limitations in their permit applications because the agencies have not imposed any such limitations on permit applications.").

The Take Memos are a legislative rule and meet the finality test for that reason. "The Ninth Circuit holds that 'a rule has the 'force of law' and is therefore legislative: (1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule.'" *Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 748 (N.D. Cal. 2019) (quoting *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016)). As explained in more detail below (*infra* Section III), the Take Memos effectively amend the prior definition of "harass" and easily meet this standard for that reason.

But even if the Take Memos were not considered legislative rules, their issuance was still final agency action. Defendants argue that agency statements "analyzing" the law cannot impose legal consequences because the courts ultimately decide the meaning of statutes. Dkt No. 77 at 11. But the case law makes clear that some interpretative rules *do* determine rights and obligations and, therefore,

are final agency actions. *Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 138 F. Supp. 3d 31, 40-41 (D.D.C. 2015) (holding that agency's argument that interpretive rule is categorically shielded from judicial review is contrary to D.C. Circuit and Supreme Court precedent). Instead, an interpretation satisfies the second prong of finality where, as here, it "gives rise to 'a direct and immediate effect on the complaining parties . . . '" *Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 749 (N.D. Cal. 2019) (quoting *Ass'n of American Medical Colleges v. United States*, 217 F.3d 770, 780 (9th Cir. 2000)). The Take Memos meet this standard because they determined that companies, individuals, and other entities regulated by the ESA have the legal right to immediately engage in activities that result in the take of threatened and endangered animals free from any concern for liability, without any further action by the Services. *See Env't Def. Ctr.*, 36 F.4th at 869. And State Plaintiffs will suffer direct and immediate effects from issuance of the Take Memos. *See* Dkt No. 70-1 ¶¶ 117-126. For example, the Take Memos will have immediate consequences for implementation of state-federal ITPs and the incentives for non-federal entities to obtain permits moving forward, and to continue to comply with previously issued permits. *Id.* ¶ 122. This is precisely the type of legal consequence that confers finality. *Env't Def. Ctr.*, 36 F.4th at 869.

Courts in similar situations have agreed. When the Department of the Interior issued a legal memorandum stating that only affirmative actions would violate the "take" prohibition in the Migratory Bird Treaty Act, a court held that legal consequences flowed from the memorandum because it eliminated the threat of prosecution for incidental take. *See Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior*, 397 F. Supp. 3d 430, 448 (S.D.N.Y. 2019). Recently, the Oregon District Court reviewed guidance documents issued by the Department of Agriculture (USDA) implementing recent changes to the Supplemental Nutrition Assistance Program. *State v. Rollins*, No. 6:25-cv-02186-MTK, 2026 WL 2767009, at *1 (D. Or. Sept. 17, 2026). USDA, in an argument that parallels the one made here, argued that the guidance documents were non-binding interpretive rules that merely repeated what the statute required. *Id.* at *7. The court rejected that interpretation because the guidance documents directed states to take certain steps. *Id.* Likewise, here the Take Memos instruct the Services' staff how to implement the "take" prohibition and state that "immediate compliance with their terms is expected." *Id.* at *8. Throughout their response, Defendants assert that the Take Memos are "non-binding." Dkt. 77 at 8, 9, &

15. But they provide no evidence or argument to suggest this is the case, and the Memos themselves do not purport to be advisory or simply a recommendation. Defendants also do not assert that where the Take Memos and codified regulations differ—as in the case of the "harass" definition—the Services will ignore the Take Memos and adhere to the regulations. In short, there is nothing to support Defendants' assertion that the Take Memos are simply non-binding guidance documents.

## III. NOTICE AND COMMENT RULEMAKING WAS REQUIRED.

The Ninth Circuit holds that "a rule has the 'force of law' and is therefore legislative . . . when the rule effectively amends a prior legislative rule." *Wilson*, 835 F.3d at 1099 (9th Cir. 2016) (cleaned up); *Cath. Legal Immigr. Network, Inc. v. Rubio*, 840 F. Supp. 3d 209, 244 (S.D.N.Y. 2026). As alleged by the State Plaintiffs, the Take Memos are inconsistent with the FWS's regulatory definition of "harass" in the ESA's definition of "take." Defendants make no attempt to reconcile the language of the harass regulation with the Take Memos. They do not assert that the harass definition will continue to be implemented as written. Instead, Defendants simply assert that the Harm Rule Rescission "is the source of the change." Dkt No. 77 at 13. But the Harm Rule Rescission never mentioned any effect it might have on the current "harass" definition, let alone rescinded it, and cannot reasonably be read to inform the public, or the Services' staff, that the harass definition will no longer be implemented as written. Accordingly, because the Take Memos effectively amend a prior legislative rule, notice and comment rulemaking was required.

## IV. THE STATE PLAINTIFFS HAVE STANDING.

Defendants' argument that State Plaintiffs lack standing also fails. To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1079 (9th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

State Plaintiffs' complaint contains numerous allegations demonstrating concrete injuries that are fairly traceable to the Take Memos. And under the standard of review for futility, these facts must be

accepted as true. *See Novak*, 795 F.3d at 1020–21 The Plaintiff States are home to a wide variety of threatened and endangered animals. Dkt No. 70-1 ¶¶ 17–82. While the Harm Rule Rescission removed protections for those animals' habitat, following issuance of the Take Memos, there is now no prohibition against harming or killing threatened and endangered animals unless that was the "purpose" of the action. This injures State Plaintiffs in their proprietary capacity both as landowners and as regulatory trustees of their fish and wildlife resources. *Id.* ¶ 117-19. This alone is sufficient to confer standing. *California v. Bernhardt*, 460 F. Supp. 3d 875, 886 (N.D. Cal. 2020) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 522 (2007)).

In addition, the Take Memos removed any incentive to obtain a Section 10 ITP for activities like constructing and operating a wind farm that directly takes endangered animals. *See* AR0045. Nor is there any incentive for current permit holders to continue implementing existing habitat conservation plans and terms and conditions of associated ITPs. This further contraction of the scope of Section 10 harms the State Plaintiffs, which rely on these plans to conserve wildlife within their borders and, in many instances, are participants in these plans. *Id.* ¶¶ 121-22. Similarly, the Take Memos greatly restrict—if not eliminate—the types of federal actions that will require an ITS under Section 7. This will harm states that rely on the Section 7 process to protect animals on federal lands or that are otherwise affected by federal agency actions. *See*, *e.g.*, *Id.* ¶¶ 58, 61, & 64.

State Plaintiffs are not merely speculating about how entities will respond to this fundamental shift in enforcement of the ESA. First, the fact that third parties will change their behavior in response to the Take Memos—by, for example, withdrawing from or deciding not to obtain an ITP—certainly falls within the "commonsense inferences" that courts can draw when assessing standing. *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 116 (2025). Second, State Plaintiffs are injured by the immediate impact of Defendants' own behavior. The Take Memos renounced Defendants' statutory obligation to regulate incidental take—most critically, in administering the ESA's ITP and ITS processes, which both require that Defendants "shall" take regulatory action to address take that is incidental to, but not the purpose of, the carrying out of an otherwise lawful activity. *See* 16 U.S.C. §§ 1536(b)(4), 1539(a)(2)(B). That injury is not contingent on agency discretion or intervening third-party decisions. The State Plaintiffs' injuries are not speculative.

## CONCLUSION

For the reasons stated above, State Plaintiffs respectfully ask the Court to grant their Motion for Leave to File First Supplemental Complaint for Declaratory Relief.

Dated: November 24, 2026

Respectfully submitted,


ROB BONTA
Attorney General of California
LAURA J. ZUCKERMAN
Supervising Deputy Attorney General

*Tara Mueller*
TARA MUELLER (SBN 161536)
JENNIFER LODA (SBN 284889)
HEATHER M. LEWIS (SBN 291933)
SUSANA AGUILERA (SBN 341788)
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Telephone: (510) 879-0754
Fax: (510) 622-2270
E-mail: Tara.Mueller@doj.ca.gov

*Attorneys for Plaintiff State of California*

NICK BROWN
Attorney General of Washington

*/s/ Maggie Baker Smith*
MAGGIE BAKER SMITH (*pro hac vice*)
ELIZABETH M. HARRIS (*pro hac vice*)
Assistant Attorneys General
Washington Attorney General's Office
Environmental Protection Division
800 5th Ave., Suite 2000, TB-14
Seattle, WA 98104-3188
Telephone: (360) 582-6569
E-mail: Maggie.Smith@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Michele Hunton*
MICHELE HUNTON (*pro hac vice*)
ZEUS SMITH (*pro hac vice*)
Assistant Attorneys General
Office of the Attorney General
Environmental Protection Division
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
E-mail: Michele.Hunton@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

ANTHONY G. BROWN
Attorney General of Maryland

*/s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN (*pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
Telephone: 410-576-6414
E-mail: sgoldstein@oag.maryland.gov

*Attorney for Plaintiff State of Maryland*

KRISTIN K. MAYES
Attorney General of Arizona

*/s/ Anthony C. Proano*
ANTHONY C. PROANO*
Special Assistant Attorney General
Office of the Arizona Attorney General
Environmental Protection Unit
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-7753
E-mail: Anthony.Proano@azag.gov

*Attorneys for Plaintiff State of Arizona*

KATHLEEN JENNINGS
Attorney General of the State of Delaware

/s/ *Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
RALPH K. DURSTEIN III
VANESSA L. KASSAB*
Deputy Attorneys General
ROBIN L. JACOBS
Assistant Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
Telephone: (302) 683-8899
E-mail: vanessa.kassab@delaware.gov

*Attorneys for Plaintiff State of Delaware*

PHILIP J. WEISER
Attorney General of Colorado

/s/ *Christopher Breidenbach*
CARRIE NOTEBOOM (*pro hac vice*)
Assistant Deputy Attorney General
CHRISTOPHER BREIDENBACH (*pro hac vice*)
Senior Assistant Attorney General
Natural Resources and Environment Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 720-508-6285
E-mail: Carrie.Noteboom@coag.gov

*Attorneys for State of Colorado*

ANNE LOPEZ
Attorney General of Hawai'i

*/s/ Danica Patel*
DANICA PATEL (*pro hac vice*)
Deputy Attorney General
425 Queen Street
Honolulu, HI 96813
Telephone: (808) 586-1500
Fax: (808) 586-1239
E-mail: Danica.L.Patel@hawaii.gov

*Attorney for Plaintiff State of Hawai'i*

WILLIAM TONG
Attorney General of Connecticut

*/s/ Daniel M. Salton*
DANIEL M. SALTON (*pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: (860) 808-5250
E-mail: daniel.salton@ct.gov

*Attorney for Plaintiff State of Connecticut*

KWAME RAOUL
Attorney General of Illinois

*/s/ Joanna K. Brinkman*
JOANNA K. BRINKMAN (*pro hac vice*)
Complex Litigation Counsel
JASON E. JAMES
Assistant Attorney General
ROGER JOHNSON
Assistant Attorney General
Illinois Attorney General's Office
115 S. LaSalle St.
Chicago, IL 60603
Telephone: 312-814-3033
E-mail: joanna.brinkman@ilag.gov

*Attorneys for Plaintiff State of Illinois*

DANA NESSEL
Attorney General of Michigan

*/s/ Nathan A. Gambill*
NATHAN A. GAMBILL (*pro hac vice*)
Assistant Attorney General
Michigan Department of Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
Telephone: (517) 335-7664
E-mail: gambilln@michigan.gov

*Attorney for the State of Michigan*

RAÚL TORREZ
Attorney General of New Mexico

*/s/ J. Spenser Lotz*
J. SPENSER LOTZ (*pro hac vice*)
Assistant Attorney General
Environmental Protection Bureau
201 Third St. NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 616-7560
E-mail: slotz@nmdoj.gov

*Attorney for Plaintiff State of New Mexico*

KEITH ELLISON
Attorney General of Minnesota

*/s/ Cat Rios-Keating*
CAT RIOS-KEATING (*pro hac vice*)
Special Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 300-7302
E-mail: catherine.rios-keating@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota*

LETITIA JAMES
Attorney General of New York

*/s/ Laura Mirman-Heslin*
LAURA MIRMAN-HESLIN (*pro hac vice*)
Assistant Attorney General
Office of the New York State Attorney
General
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6091
E-mail: Laura.Mirman-Heslin@ag.ny.gov

*Attorney for Plaintiff State of New York*

JENNIFER DAVENPORT
Attorney General of New Jersey

*/s/ Lisa J. Morelli*
LISA J. MORELLI, State Bar No. 137092
ALANA V. PACCIONE (*pro hac vice*)
Deputy Attorneys General
New Jersey Division of Law
25 Market Street
Trenton, New Jersey 08625
Telephone: (609) 376-2740
E-mail: Lisa.Morelli@law.njoag.gov

*Attorneys for Plaintiff State of New Jersey*

DAN RAYFIELD
Attorney General of Oregon

*/s/ Paul Garrahan*
PAUL GARRAHAN (*pro hac vice*)
Sr. Assistant Attorney General
Oregon Department of Justice
Natural Resources Section
1162 Court Street NE
Salem, Oregon 97301-4096
Telephone: (503) 947-4540
E-mail: Paul.Garrahan@doj.oregon.gov

*Attorney for Plaintiff State of Oregon*

PETER F. NERONHA
Attorney General of Rhode Island

*/s/ Nicholas M. Vaz*
NICHOLAS M. VAZ (*pro hac vice*)
Assistant Attorney General
Rhode Island Office of the Attorney General
Environment and Energy Unit Chief
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400 ext. 2297
E-mail: nvaz@riag.ri.gov

*Attorney for Plaintiff State of Rhode Island*

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Kevin Grzebielski*
KEVIN L. GRZEBIELSKI (*pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Telephone: (608) 266-7234
Email: Kevin.Grzebielski@wisdoj.gov

*Attorney for Plaintiff State of Wisconsin*

CHARITY R. CLARK
Attorney General of Vermont

*/s/ Justin G. Sherman*
JUSTIN G. SHERMAN*
Assistant Attorney General
Vermont Attorney General's Office
Environmental and Public Protection Division
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-5621
E-mail: justin.sherman@vermont.gov

*Attorney for Plaintiff State of Vermont*

BRIAN L. SCHWALB
Attorney General for the District of Columbia

*/s/ Coty Montag*
COTY MONTAG, State Bar No. 255703
Deputy Attorney General
LAUREN MARKS
Special Assistant Attorney General
KATHRYN BLANCO
Assistant Attorney General
400 6th Street NW Washington, D.C. 20001
Telephone: 202-256-3713
E-mail: Coty.Montag@dc.gov

*Attorneys for Plaintiff District of Columbia*

JAY JONES
Attorney General for the Commonwealth of Virginia

*/s/ Megan C. Keenan*
MEGAN C. KEENAN*
Deputy Solicitor General
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 997-5222
E-mail: mkeenan@oag.state.va.us

*Attorney for Plaintiff Commonwealth of Virginia*

**Application for admission pro hac vice forthcoming*