UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE et al.,<br><br>Defendants. | Case No. 2:26-cv-02473-TMC<br><br>ORDER ON MOTIONS FOR LEAVE TO FILE AMENDED AND SUPPLEMENTAL COMPLAINTS FOR DECLARATORY AND INJUNCTIVE RELIEF |

## I. INTRODUCTION

The Endangered Species Act ("ESA") prohibits the "tak[ing]" of endangered species, including by "harm[ing]" or attempting to "harm" them. 16 U.S.C. § 1538(a)(1)(B); *id.* § 1532(19). This consolidated case arises out of challenges to the decision by the National Marine Fisheries Service and the U.S. Fish and Wildlife Service ("USFWS") (collectively, the "Services") to rescind the regulatory definition of "harm" under the ESA (the "Harm Rule"). *See* Rescinding the Definition of "Harm" Under the ESA, 91 Fed. Reg. 43,300 (July 14, 2026). On September 14, 2026, the day the Harm Rule took effect, the USFWS and the National Oceanic and Atmospheric Administration ("NOAA") issued memoranda described as "interpretation[s]"

of the statutory meaning of "take" that the Services "adopted" in the Harm Rule (collectively, the "Take Memos"). Dkt. 31 at 2; *see also* Dkt. 19-3; Dkt. 19-4. The Take Memos state, among other things, that the ESA's prohibition on "'take' reaches only an affirmative act that is intentionally and purposefully directed at a particular animal." Dkt. 19-3 at 2; 19-4 at 2. Now, all three plaintiffs seek to add claims challenging the Take Memos under the Administrative Procedure Act ("APA").[1] Dkt. 25 (2:26-cv-02474);[2] Dkt. 19; Dkt. 25. Plaintiff Swinomish Indian Tribal Community et al. ("Swinomish") also seeks to amend its complaint to add a claim under ESA Section 11. Dkt. 25.

Plaintiffs[3] argue the Take Memos "extend well beyond interpretive guidance" about the rescission of the regulatory definition of "harm" and "seek to substantively nullify" the ESA's definition of "take." Dkt. 25 at 2 (2:26-cv-02474-TMC). The Services disagree, arguing that adding claims related to the Take Memos would be futile as the memos are not "'final agency action' under the APA because they do not consummate agency decision-making or determine

---

[1] Although Plaintiff Puyallup Tribe of Indians's ("Puyallup") motion is styled as a motion to supplement under Federal Rule of Civil Procedure 15(d), the Court construes it as a motion to amend under Rule 15(a). Dkt. 19. A supplemental pleading is used to allege relevant facts occurring "after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Here, Puyallup seeks to add claims based upon facts already existing as of the date of the pleading sought to be amended. *See* Dkt. 18 (Puyallup's amended complaint was filed on October 8, 2026); Dkt. 19 at 3 (noting that the facts underlying the motion were made public on September 16, 2026).

[2] On October 2, 2026, this Court consolidated three cases for motions practice—2:26-cv-02473-TMC *Swinomish Indian Tribal Community et al. v. National Marine Fisheries Service et al.*, 2:26-cv-02474-TMC *Center for Biological Diversity et al. v. Douglas Burgum et al.*, and 3:26-cv-05788-TMC *Puyallup Tribe of Indians v. United States Fish and Wildlife Service*. CBD filed its original complaint and motion for leave to file its first supplemental complaint before consolidation. When referencing a docket number from a pre-consolidation case, this Order will denote that in parentheses after the docket number.

[3] The Court uses "Plaintiffs" in this Order to refer to a general position that all three plaintiffs have taken. Where the plaintiffs' positions differ, the Court names each one.

rights or obligations" but rather are "at most, post-decisional analysis without legal consequences." Dkt. 20 at 2. The Court concludes that Plaintiffs' proposed APA claims are not futile. Plaintiffs have plausibly alleged the Take Memos reflect a consummation of the agency's decision-making process about the statutory meaning of "take" in the ESA, and that decision is one from which legal consequences will flow. The Court therefore GRANTS Plaintiffs' motions to amend and supplement their complaints.

## II. BACKGROUND

The ESA prohibits "any person subject to the jurisdiction of the United States" from "tak[ing] any [endangered] species within the United States or the territorial sea of the United States." 16 U.S.C. § 1538(a)(1)(B). It defines "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). For decades, the Services defined "harm" to include "an act which actually kills or injures fish or wildlife," which "include[d] significant habitat modification or degradation where it actually kill[ed] or injure[d] fish or wildlife by significantly impairing essential behavioral patterns, including breeding, spawning, rearing, migrating, feeding[,] or sheltering." 64 Fed. Reg. 60727, 60731 (Nov. 8, 1999); *see also* 46 Fed. Reg. 54748, 54750 (Nov. 4, 1981). On July 14, 2026, the Services rescinded that definition, concluding it "d[id] not match the single, best meaning of the statute," but "refrain[ed] from implementing a replacement definition." Rescinding the Definition of "Harm," 91 Fed. Reg. at 43301–02. That day, three lawsuits were filed in this Court challenging the new Harm Rule. Dkt. 1; Dkt. 1(2:26-cv-02474); Dkt. 1 (3:26-cv-05788); Dkt. 16 (consolidating cases).

On September 14, 2026, the day the rescission went into effect, USFWS and NOAA issued the Take Memos purporting to provide internal guidance on the "[s]cope" of the rescission. Dkt. 19-3; Dkt. 19-4. The memos state, among other things, that the ESA's

prohibition on "'take' reaches only an affirmative act that is intentionally and purposefully directed at a particular animal." Dkt. 19-3 at 2. For example, "[a] vessel that inadvertently strikes a whale has not taken it, because the vessel's course was not set against the whale. Felling a tree is not a take of the bats roosting in it unless the tree is felled for the purpose of killing or capturing them." *Id.* Plaintiff Center for Biological Diversity et al. ("CBD") seeks leave to supplement its complaint to challenge the Take Memos under the APA. Dkt. 25 (2:26-cv-02474). Puyallup seeks leave to amend its complaints to bring the same challenge. Dkt. 19. Swinomish also seeks leave to supplement its complaint to challenge the Take Memos under the APA and amend its complaint to add a claim under ESA Section 7. Dkt. 25 at 1.

Plaintiffs argue the Take Memos "extend well beyond interpretive guidance" related to the Harm Rule and "seek to substantively nullify" the ESA's definition of "take." Dkt. 25 at 2 (2:26-cv-02474-TMC). They argue that the Take Memos constitute "final agency action" under the APA, "subject to notice-and-comment rulemaking[]" because they "create rights, impose obligations[,] and effect a change in existing law." Dkt. 25 at 7. The Services argue the Take Memos are not "'final agency action' under the APA because they do not consummate agency decision-making or determine rights or obligations" but rather are "at most, post-decisional analysis without legal consequences." Dkt. 20 at 2. Dkt. 25 at 1–2. For the following reasons, the Court agrees with Plaintiffs and GRANTS their motions to amend their complaints.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 15(a)

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Court must apply this policy "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). The Court has

discretion to grant or deny a request to amend but must provide justification when it denies a request. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend under Rule 15(a)(2) "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011); *see also Foman*, 371 U.S. at 182. A proposed claim is futile only if it fails as a matter of law. See *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981); *see also Chudacoff*, 649 F.3d at 1152.

### B. Federal Rule of Civil Procedure 15(d)

Under Federal Rule of Civil Procedure 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." In determining whether to grant leave to file a supplemental complaint, the Court considers "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Lyon v. U.S. ICE*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (citing *Foman*, 371 U.S. at 182). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. A proposed claim is futile only if it fails as a matter of law. *See Koster*, 847 F.3d at 656.

## IV. DISCUSSION

Defendants argue that Plaintiffs' proposed claims are futile for four reasons. First, Defendants argue that Plaintiffs lack standing to assert claims challenging the Take Memos. *See, e.g.*, Dkt. 31 at 10–11. Second, Defendants contend that Plaintiffs' proposed claims challenging the Take Memos fail because they are not final agency action under the APA from which legal

consequences flow. *Id.* at 5–9. Third, Defendants argue that Plaintiffs' proposed claims relating to notice-and-comment rulemaking are futile because the Take Memos were not subject to notice-and-comment rulemaking requirements. *Id.* at 9–10. Finally, Defendants assert that Swinomish's proposed amendment to add a claim under ESA Section 7 fails as a matter of law because the Services' actions were not discretionary, the Services were acting in their capacity as administrators of the ESA, and Swinomish failed to provide the requisite pre-suit notice of intent to sue ("NOI"). *Id.* at 11–13. The Court addresses each argument in turn.

**A. Plaintiffs have plausibly alleged Article III standing to challenge the Take Memos under the APA.**

To establish Article III standing,

> a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1079 (9th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). The Supreme Court recently affirmed that in cases involving government regulation or under-regulation, courts draw "commonsense inferences" about predictable third-party responses that could contribute to a party's injury. *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 116 (2025).

Defendants argue that Plaintiffs' alleged injuries depend on speculative third-party conduct: regulated parties must rely on the Take Memos to change their behavior, resulting in increased and incidental take that ultimately harms Plaintiffs' interests. Dkt. 20 at 11–13. This argument fails. Because the Take Memos significantly narrow the circumstances in which conduct affecting listed species constitutes a "take," it is reasonable to infer that at least some

regulated parties will rely on them to engage in conduct otherwise subject to ESA restrictions. Swinomish alleges, for example, that "the Services' new definitions of 'harm' and 'take' injures the Tribes and their members' interest in fishing for salmon," including in subsistence fishing, as it "will reduce habitat availability and quality for ESA-protected salmon" and "diminish the Tribe's fishing opportunities." Dkt. 25-2 ¶ 15. Puyallup alleges, for example that declining fish populations have already impaired its ability to exercise its Treaty fishing rights and that reduced protections for listed species will exacerbate those harms. Dkt. 1 (3:26-cv-05788) ¶¶ 19–23; Dkt. 19-1 ¶ 23. CBD alleges, for example, harm to a conservation professional who works to conserve ESA-listed northern spotted owls. Dkt. 1 (2:26-cv-02474) ¶¶ 17.D. Plaintiffs have therefore plausibly alleged injuries traceable to the Take Memos.

**B. Plaintiffs' claims alleging the Take Memos are final agency action are not futile.**

To bring an APA claim based on a challenged agency action, the action must constitute "final agency action." 5 U.S.C. § 704. Under *Bennett v. Spear*, two conditions must be satisfied for an agency action to be "final": "First, the action must mark the 'consummation' of the agency's decisionmaking process" and cannot be "of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). "[S]econd, the action must be one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'" *Id.* (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). Courts "do not defer to the agency's position on whether agency action is final." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 979 n.1 (9th Cir. 2006). Rather, the Ninth Circuit has directed courts to focus on the "practical and legal effects of the agency action" and interpret finality "'in a pragmatic and flexible manner.'" *Id.* at 982 (quoting *Or. Nat. Res.*

*Council v. Harrell*, 52 F.3d 1499, 1504 (9th Cir. 1995)). "[F]inality is . . . a jurisdictional requirement." *Ukiah Valley Med. Ctr. v. F.T.C.*, 911 F.2d 261, 266 (9th Cir. 1990).

***1.*** *Under the first* Bennett *prong, Plaintiffs have plausibly alleged that the Take Memos are the consummation of the Services' decisionmaking process as to the meaning of "take" under the ESA.*

Courts applying *Bennett* to agency communication "differentiate between an informational document that merely provides the agency's interpretation of a statute . . . and a decision that determines how a statute or regulation applies to facts for enforcement purposes." *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022) (internal citations omitted). Under the first *Bennett* prong, agency action is final when it represents the "consummation" of the agency's decisionmaking process—that is, when the agency has "ruled definitively" on the relevant issue rather than taking action that is tentative or interlocutory. *Bennett*, 520 U.S. at 177–78. An agency's ability to later "revise" its position "does not make an otherwise definitive decision nonfinal." *United States Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 598 (2016). Rather, agency action is not final where the action "has not bound [the agency] to any particular decision." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1009 (9th Cir. 2021).

Plaintiffs have plausibly alleged that the Take Memos consummate the Services' decisionmaking as to the meaning of "take" under the ESA. Unlike the Harm Rule, which addressed only the regulatory definition of "harm," the Take Memos purport to define "take" as reaching "only an affirmative act that is intentionally and purposefully directed at a particular animal." Dkt. 19-4 at 2. Unlike a tentative or interlocutory determination, the Memos do not leave open the definition of "take" for further agency decisionmaking. *See Hawkes*, 578 at 598. While the Services correctly note that the use of mandatory language such as "must" and "requires" does not automatically make the memos a final agency action, *see Whitewater Draw*,

5 F.4th at 1009, Plaintiffs do not contend the Take Memos are final simply because they use such language, but because they purport to settle the meaning of "take" itself. At this stage, Plaintiffs have plausibly alleged that the Services have "ruled definitively" on the statutory meaning of "take" in the ESA. *Hawkes*, 578 at 598.

**2.** *Under the second* Bennett *prong, Plaintiffs plausibly allege the Take Memos are an action from which legal consequences will flow.*

Under the second *Bennett* prong, the Court considers whether the challenged action is one that determines "rights or obligations" or "from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (citation omitted). This prong is satisfied when the agency action fixes legal or regulatory consequences of the conduct at issue, rather than merely expressing the agency's view or recommending a particular course of action. *See Whitewater Draw*, 5 F.4th at 1009; *S. Cal. All.*, 8 F.4th at 838.

The Services argue that the Take Memos do not satisfy this prong because they are merely the agency's statement of its interpretation of the law without legal consequences, "not actual commands to agencies or regulated parties regarding any specific project or other matter." Dkt. 20 at 2, 8. But Plaintiffs plausibly allege they do more—they "advise exactly how ["take"] must be interpreted throughout entire agencies." Dkt. 21 at 6. Unlike the guidance in *Whitewater Draw* and *Southern California Alliance*, which did not resolve the legal status of regulated conduct, the Take Memos state that they are fixing the Services' position on the scope of the ESA's prohibition on "take." That scope has profound consequences for how the statute will (or will not) be enforced. Plaintiffs have therefore plausibly alleged that the Memos are actions from which legal consequences will flow.

### C. Plaintiffs' claims alleging that the Take Memos violated notice-and-comment requirements under the APA are not futile.

"The APA requires an agency proposing a new rule to provide notice of the rule and an opportunity for interested parties to comment." *Reno-Sparks Indian Colony v. U.S. E.P.A.*, 336 F.3d 899, 909 (9th Cir. 2003) (citing 5 U.S.C. § 553(b-c)). "An agency need not comply with the above requirements, however, when its proposed rule is interpretive." *Id.* (citing 5 U.S.C. § 553(b)(3)(A)). "[I]nterpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule. . . . Legislative rules, on the other hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Hemp Indus. Ass'n v. Drug Env't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003). Courts "construe narrowly the APA's interpretive rule exception," *Reno-Sparks*, 336 F.3d at 909, and "the court need not accept the agency characterization [of whether an action is an interpretive rule] at face value," *Hemp Indus.*, 333 F.3d at 1087.

Defendants argue that adding claims that the Take Memos failed to engage in notice-and-comment rulemaking would be futile because those requirements do not apply to interpretive rules. Dkt. 20 at 10. The Take Memos "could not have the 'force of law' because they merely summarize" and "interpret[]" the Harm Rule. *Id.* at 10–11. But Plaintiffs plausibly allege that the Take Memos do more than interpret existing law. The Take Memos define "take" as reaching "only an affirmative act that is intentionally and purposefully directed at a particular animal," which extends beyond what the Services adopted in the Harm Rule. Dkt. 19-4 at 2. That narrows the scope of conduct subject to the ESA's prohibition on "take," rather than merely clarifying existing law. Plaintiffs have therefore plausibly alleged that the Take Memos promulgated a new "substantive" rule that changed existing law or policy. Their notice-and-comment claims are thus not futile.

**D. Swinomish's proposed ESA Section 7 claim is not futile.**

"Section 7 imposes on all agencies a duty to consult with either [USFWS] or [NOAA] before engaging in any discretionary action that may affect a listed species or critical habitat." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1020 (9th Cir. 2012). Agency action is defined "broad[ly]," requiring (1) that a federal agency "affirmatively authorized, funded, or carried out the underlying activity" and (2) that a federal agency "had some discretion to influence or change the activity for the benefit of a protected species." *Id.* at 1021. The Services are not required to consult under Section 7 when they are "acting in their unique statutory role as administrators of the [ESA] and are engaged in a legal exercise of interpreting the standards of the Act." 91 Fed. Reg. at 43310, 43316. Defendants argue that the Services had no duty to consult because (1) their rescission was not discretionary, (2) they were acting as administrators of the ESA, and (3) Swinomish failed to provide notice of an intent to challenge the subsequently issued Take Memos. Dkt. 31 at 11–13.

The Court concludes these arguments do not establish futility. Swinomish's proposed amended complaint alleges the Services exercised discretion by undertaking rulemaking, rescinding the existing definition, and adopting a substantially narrower interpretation of "harm." Dkt. 25-2 at 38–39. Defendants do not cite—and the Court has not identified—any case that holds agency action is nondiscretionary under Section 7 merely because the agency believes its previous interpretation of a statute should be rescinded.

Defendants further contend that the Services were not required to consult because they were acting as administrators of the ESA rather than "as action agencies." Dkt. 31 at 12. But the Ninth Circuit has held that an agency may be required to consult under Section 7 before repealing an existing regulation through a new rule. *Cal. ex rel. Lockyer v. USDA*, 575 F.3d 999, 1019 (9th Cir. 2009) (holding that the USFWS "was required to engage in consultation under

section 7 of the [ESA] before effecting the rule's repeal through the promulgation" of a new rule); *see also Cooling Water Intake Structure Coal. v. United States Env't Prot. Agency*, 905 F.3d 49, 74 (2d Cir. 2018) (recognizing that an agency's promulgation of a regulation may constitute "agency action" subject to Section 7 consultation).

Finally, the July 14 notice expressly identified the Services' failure to consult before rescinding the definition of "harm" as the basis for its Section 7 claim. Dkt. 25-3 at 2–3. The Take Memos are alleged as subsequent evidence of that violation. Dkt. 25-2 at 39. Thus, the notice requirement does not render the proposed claim futile. The Court therefore concludes that Swinomish has stated a plausible Section 7 claim and grants leave to add it.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motions to amend and/or supplement. Dkt. 25 (2:26-cv-02474); Dkt. 19; Dkt. 25. Plaintiffs shall file their amended or supplemental complaints no later than December 8, 2026.

Dated this 24th day of November, 2026.

Tiffany M. Cartwright
United States District Judge